THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 3:12-cr-30327-MJR |
| | ) | |
| COREY ALLEN, | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION OF FACTS

Now comes, The United States of America, by Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and through Steven D. Weinhoeft, Assistant United States Attorney, who enters into the following Stipulation of Facts with the Defendant, **COREY ALLEN**, and his attorney, pertaining to the relevant conduct of the defendant within the scope of U.S.S.G. §1B1.3. The parties hereby stipulate and agree as follows:

### A. Introduction

At all times relevant to the Indictment,

1.    **COREY ALLEN** was a sworn police officer who was employed as the Assistant Chief of Police for the Village of Centreville, Illinois.

2.    Individual #1 was a resident of Centreville, Illinois who was required to register his address with the Centreville Police Department, pursuant to the Illinois Sex Offender Registration Act (730 ILCS 150/1, *et. seq.*), subsequent to being convicted for Aggravated Criminal Sexual Abuse (720 ILCS 5/12-16).

3.    **ALLEN** knew that Individual #1 was a registered sex offender, who was previously convicted of a felony crime punishable by imprisonment for a term exceeding one year.

## B. Sale of a Firearm

4.    On May 3, 2012, **COREY ALLEN** sold a Hi-Point Model JHP 45ACP semi-automatic pistol, bearing serial number 481800, along with two magazines, to Individual #1 for $100. **ALLEN** made that sale knowing and having reasonable cause to believe that Individual #1 had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of both state and federal law.

## C. October 11, 2012 - Operation

5.    On October 11, 2012, federal authorities conducted further investigation. Individual #1 purported to flee from federal agents before being captured and placed in custody. **COREY ALLEN**, who was a canine officer, was working and on duty during the operation. **ALLEN** was called to the scene to speak with the subject.

6.    **ALLEN** arrived and spoke privately with Individual #1. The conversation was captured on covert recording devices. Individual #1 communicated that he fled from the officers because he was in possession of the firearm and that he threw it in the field near where a police car was now located. Individual #1 told **ALLEN** that he needed money and he was on his way to sell it to Individual #2. **ALLEN** said that he was going to tell federal agents that Individual #1 threw a small amount of marijuana. **ALLEN** ended the conversation and rejoined the federal agents.

7.    **COREY ALLEN** falsely told federal agents that he had attempted to interview Individual #1, but that Individual #1 "shut down" after asking what was going to happen to him.

**ALLEN** falsely told officers that it was likely that Individual #1 had thrown marijuana rather than a gun.

8.      After searching for a period of time, agents discovered the Hi-Point Model JHP 45ACP semi-automatic pistol and showed it to **ALLEN,** who then spoke privately to Individual #1 a second time.  Individual #1 told **ALLEN** not to worry and re-assured **ALLEN** that he would not say anything to anyone. **ALLEN** ended the conversation and rejoined the federal agents for a second time.

9.      **COREY ALLEN** falsely told federal agents that Individual #1 still refused to talk.

## D. Interview

10.     On November 30, 2012, members of the Metro East Public Corruption Task Force, including federal agents from the IRS and FBI went to **ALLEN's** home to interview him about the situation. **ALLEN** agreed to talk to agents and falsely stated that he did not provide the gun to Individual #1, claiming that he had no idea where Individual #1 had gotten the gun from, but that it did not come from him. **ALLEN** further stated that prior to October 11, 2012, he had never seen the gun before. In truth and in fact, **ALLEN** had previously possessed the firearm and had sold the firearm to Individual #1 for $100 on May 3, 2012.

11.     **ALLEN** was confronted with recordings from the sting operation that occurred on October 11, 2012, but he persisted in denying any prior knowledge of the gun. **ALLEN** acknowledged that Individual #1 had previously asked him for bullets, but he falsely denied supplying the gun to Individual #1.

12.     **ALLEN** was then confronted with details from recordings made on May 3, 2012, when the gun sale occurred.  After being advised that he was recorded discussing the gun's firing

pin, as well as telling Individual #1 that a "throw-down" gun costs $100, **ALLEN** stated that he wished to correct his statement. He then admitted to selling the gun to Individual #1 for $100, even though he knew that Individual #1 was a convicted felon. **ALLEN** similarly admitted that his earlier statements to investigators were false. **ALLEN** stated that he came into possession of the gun while working as a police officer, but that rather than documenting the recovery of the weapon he simply kept it.

UNITED STATES OF AMERICA

STEPHEN R. WIGGINTON
United States Attorney

4-25-13

STEVEN D. WEINHOEFT
Assistant United States Attorney

**AGREED AS TO FORM AND CONTENT:**

COREY ALLEN

Date: 4-3-13

ETHAN SKAGGS

Date: 4/3/13